UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MARK L. KNOTT, | ) | NO. CV 14-4455 AGR |
| Plaintiff, | ) | |
| v. | ) | |
| CAROLYN W. COLVIN, | ) | MEMORANDUM OPINION AND ORDER |
| Commissioner of Social Security, | ) | |
| Defendant. | ) | |

Plaintiff Mark L. Knott filed this action on June 18, 2014. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 9, 10.) On December 23, 2014, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

Having reviewed the entire file, the court affirms the decision of the Commissioner.

## I.

## PROCEDURAL BACKGROUND

On February 28, 2011, Knott filed an application for supplemental security income, alleging an onset date of January 1, 2007. Administrative Record ("AR") 15, 142. The application was denied initially and on reconsideration. AR 63, 74. Knott requested a hearing before an Administrative Law Judge ("ALJ"). AR 81. On September 18, 2012, the ALJ conducted a hearing at which Knott and a vocational expert testified. AR 29-58. At the hearing, Knott amended the onset date to February 28, 2011. AR 15, 32. The ALJ left the record open for 30 days to allow the submission of additional medical records. AR 56. Knott submitted additional medical records on November 14, 2012. AR 419-74. On December 17, 2012, the ALJ issued a decision denying benefits. AR 12-24. On March 6, 2014, the Appeals Council denied the request for review. AR 4-8. This action followed.

## II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must

defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

## III.
## DISCUSSION

### A.    Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

### B.    The ALJ's Findings

Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that Knott has the severe impairments of human immunodeficiency virus positive with fatigue, high blood pressure, cardiomegaly and substance abuse in reported remission.  AR 17.

Knott has the residual functional capacity ("RFC") to perform light work.  He can lift and/or carry 10 pounds frequently and 20 pounds occasionally; stand or walk for a total of 6 hours in an 8-hour workday; sit for a total of 6 hours in an 8-hour workday, but must be free to reposition himself every 30 minutes; and never climb ladders, ropes or scaffolds.  He must avoid concentrated exposure to machines and heights.  He is limited to simple, routine, repetitive tasks; low stress tasks that would permit only occasional changes in the work setting; and superficial frequent contact with the public and co-workers.  AR 19.  He has no

---

[1] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work.  *Lounsburry*, 468 F.3d at 1114.

3

past relevant work.  AR 23.  There are jobs that exist in significant numbers in the national economy that Knott can perform such as bottling line attendant, punchboard assembler and bench assembler.  *Id.*

### C. Treating Physician

Knott contends the ALJ erred in evaluating the opinion of Dr. Mendelson, his treating psychiatrist.

An opinion of a treating physician is given more weight than the opinion of non-treating physicians.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  To reject an uncontradicted opinion of a medically acceptable treating source, an ALJ must state clear and convincing reasons that are supported by substantial evidence.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  When a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Orn*, 495 F.3d at 632 (citations and quotation marks omitted).  "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict."  *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002).

Dr. Mendelson completed a mental impairment questionnaire on June 26, 2012.  AR 404-07.  Dr. Mendelson diagnosed Knott with bipolar disorder, type II and assigned a Global Assessment of Functioning ("GAF") of 60.[2]  AR 21, 404.  Knott showed symptoms of poor memory, appetite disturbance with weight change, sleep disturbance, mood disturbance, emotional lability, substance dependence, severe fatigue, obsessions with cleanliness, feelings of guilt/

---

[2] A GAF of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. Text Revision 2000).

4

worthlessness, difficulty thinking or concentrating, and irritability.  AR 404-05.  Dr. Mendelson anticipated that Knott would be absent from work more than three times per month as a result of his impairments or treatment.[3]  AR 406.  He would have difficulty working at a regular job on a sustained basis due to poor stamina, fatigue, irritability and insomnia.  AR 21-22, 407.  He is moderately limited in activities of daily living and maintaining social functioning.  He "often" has deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner.  AR 22, 407.  He "often or twice" has episodes of deterioration or decompensation in work or work-like settings which cause him to withdraw from that situation or to experience exacerbation of signs and symptoms.  *Id.*

The ALJ gave Dr. Mendelson's opinion "no weight" because it was not supported by the objective medical findings and was inconsistent with the objective findings and observations of other treating and examining physicians.  AR 22.[4]  The record contains Dr. Mendelson's treatment records between January 27, 2012 and September 12, 2012.  AR 460-68.  Reports on Knott's mental status indicate that he was generally alert with good or neutral mood, broad affect, linear thought processes, and no suicidal or homicidal ideation or

---

[3] The ALJ mistakenly wrote that Dr. Mendelson believed Knott would miss more than four days of work per month.  AR 22.

[4] The ALJ also noted the lack of a "longitudinal physician/patient relationship."  AR 22.  Dr. Mendelson first started seeing Knott on October 21, 2011, and saw him monthly thereafter.  AR 404.  Because Dr. Mendelson completed the questionnaire in June 2012, the ALJ reasonably found he lacked a longitudinal picture of Knott's impairments.  *See* 20 C.F.R. § 404.1527(d)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.  When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source."). Knott's reliance on *Ghokassian v. Shalala*, 41 F.3d 1300 (9th Cir. 1994), is misplaced.  In *Ghokassian*, the Ninth Circuit found that a physician who saw the claimant twice within a 14-month period, prescribed medication and referred to him as "my patient" was a treating physician.  *Id.* at 1303.  Here, it is undisputed Dr. Mendelson was a treating physician.

5

psychoses. AR 460, 462-64, 467. The progress note on February 10, 2012 indicates Knott attended support groups and helped to take care of his mother. AR 467. He was friendly and smiling with good insight and judgment. *Id.* As of September 12, 2012, Knott was sober 9 months, had increased energy with Wellbutrin[5] and therefore felt ok during the day,[6] and had no irritability. AR 460. Knott argues the treatment records support Dr. Mendelson's opinion because they show Knott received treatment for bi-polar disorder since January 2012 and document fatigue. However, the records show marked improvement and the ALJ could have reasonably concluded the records do not support the degree of limitation Dr. Mendelson assessed. The ALJ may properly discount a treating physician's opinion that is not supported by treatment records. *See Bayliss*, 427 F.3d at 1216; *Thomas*, 278 F.3d at 957 (ALJ need not accept treating physician's opinion that is inadequately supported by clinical findings).

The ALJ's finding that Dr. Mendelson's opinion was inconsistent with the remaining medical opinions was supported by substantial evidence.[7] AR 22, 249-337, 346-54. MHO case management notes from March 2011 indicate Knott continued to attend school even with complaints of depression and decreased energy levels. AR 353. In August 2011, Knott's mood was stable, his sleep was helped with Trazadone, and he was put on medication for mood swings. AR 354. On September 2, 2011, Dr. Nguyen, who performed a complete psychiatric evaluation, found that Knott's mental status was "unremarkable" and his cognitive function was preserved. AR 21, 357-58. Knott could focus and maintain

---

[5] Before Dr. Mendelson increased the dosage of Wellbutrin, the progress notes on June 26, 2012 and July 27, 2012 indicated low energy. AR 461-62.

[6] Although Knott felt ok during the day, he felt extreme fatigue when he took his other medication presumably in the evening. Knott was therefore going to change to a less fatiguing medication the next month. AR 460.

[7] The record contains a mental residual functional capacity questionnaire from Dr. Aziz, dated October 29, 2010, which precedes the alleged onset date of February 28, 2011. AR 320-25.

attention, and could understand, remember and follow instructions. AR 358. He was able to perform work-related duties and adapt to commonplace stressors of a work environment.[8] AR 21, 358. An examining physician's opinion constitutes substantial evidence when, as here, it is based on independent clinical findings.[9] *Orn*, 495 F.3d at 631.

To the extent Knott contends the ALJ should have recontacted Dr. Mendelson for additional information, his argument fails. "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (citation omitted). The ALJ did not find that the record was ambiguous or inadequate.

The ALJ articulated specific and legitimate reasons, supported by substantial evidence in the record, for discounting Dr. Mendelson's opinion. The ALJ did not err.

### D.   Lay Witness Testimony

Knott contends the ALJ did not properly consider his mother's statements.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). "When an ALJ discounts the testimony of lay witnesses, 'he [or she] must give reasons that are germane to each witness.'"

---

[8] Although the ALJ gave substantial weight to Dr. Nguyen's opinion, the RFC includes limitations for Knott's mental impairments. AR 19.

[9] The ALJ also relied on the opinion of the state agency medical consultant, who opined that Knott was capable of understanding, remembering and carrying out simple and complex but not detailed instructions on a consistent basis in a work environment, asking simple questions and responding appropriately to supervisors as well as engaging in superficial relationships with coworkers and the public, and making plans independently as well as recognizing and responding appropriately to normal hazards and changes in a work setting. AR 21, 363-65. The opinion of a non-examining physician constitutes substantial evidence when, as here, the opinion is consistent with other evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.1995).

*Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (citation omitted).

The ALJ did not address Mrs. Knott's lay witness statements. However, the ALJ's error was harmless in this case. "Where lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony, it would be inconsistent with our harmless error precedent to deem the ALJ's failure to discuss the lay witness testimony to be prejudicial per se." *Molina v. Astrue*, 674 F.3d 1104, 1117 (9th Cir. 2012);[10] *Valentine*, 574 F.3d at 694 (when ALJ provided clear and convincing reasons for rejecting claimant's testimony and lay witness' testimony was similar, "it follows that the ALJ also gave germane reasons for rejecting the [lay witness'] testimony."). Here, the lay witness did not identify material limitations that were not generally described by Knott. AR 157-72, 184-91, 200-07. As discussed below, the ALJ articulated sufficient reasons supported by substantial evidence for discounting Knott's credibility. The ALJ's error in failing to articulate reasons for discounting Mrs. Knott's statements was, therefore, harmless.

### E. Credibility

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain

---

[10] The Ninth Circuit has rejected Knott's argument that the harmless error test does not apply when an ALJ does not address material lay witness testimony. *Molina*, 674 F.3d at 1117 ("Interpreting *Stout* as creating a rule that the ALJ's failure to expressly reject any facially material lay witness testimony is per se prejudicial would run afoul of our settled rule that we will not reverse for errors that are 'inconsequential to the ultimate nondisability determination.'") (citations omitted).

or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  The ALJ found that Knott's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  AR 20.

"Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (citation and quotation marks omitted).  "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints[.]'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted).  The ALJ found Knott's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent they were inconsistent with the RFC.  AR 20.

In weighing credibility, the ALJ may consider factors including:  the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (e.g., movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation." *Bunnell*, 947 F.2d at 346 (citing Social Security Ruling ("SSR") 88-13) (quotation marks omitted).[11]  The ALJ may consider:  (a) inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies between a claimant's statements and activities; (c) exaggerated complaints; and (d) an

---

[11] Social Security rulings do not have the force of law.  Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

9

unexplained failure to seek treatment.  *Thomas*, 278 F.3d at 958-59.

The ALJ discounted Knott's credibility on the following grounds:  (1) Knott's activities of daily living were not consistent with his alleged degree of impairment; (2) the objective medical evidence did not support the severity of the alleged symptoms; and (3) Knott's verbal responses and overall demeanor at the hearing were not suggestive of a person who was experiencing disabling limitations.  AR 20-22.

An ALJ may consider a claimant's daily activities when weighing credibility.  *Bunnell*, 947 F.2d at 346.  The ALJ cited inconsistencies between Knott's statements and daily activities.  AR 20.  Knott's activities of daily living included bathing, dressing, preparing simple meals, occasionally shopping, and attending group meetings for people with bipolar disorder.  AR 20, 41-43, 157-64, 200-07.  Knott testified he could lift 30 to 40 pounds and walk a couple of blocks.  AR 20, 40-41.  The ALJ reasonably found Knott's activities of daily living inconsistent with the degree of his alleged symptoms.  AR 20, 40; *see also Molina*, 674 F.3d at 1113 ("Even where [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").  Moreover, when evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

Knott argues that the ALJ failed to recognize that he experienced extreme fatigue due to the side effects of his medication.  The ALJ noted that fatigue was one of the alleged reasons Knott could not work.  AR 20.  Knott testified on September 18, 2012 that his daily activities included taking a three or four hour nap during the day, due to side effects from Complera.  AR 42-43.  The record indicates that Knott started taking Complera, which allegedly caused the fatigue and drowsiness, in approximately March 2012, and that he was to change to a

less fatiguing medication in October 2012.[12] AR 44, 460, 466. As discussed above, the September 2012 progress note indicated Knott had increased energy during the day on Wellbutrin. The ALJ could reasonably find that Knott's medication was adjusted to address the side effects of drowsiness. AR 20.

      Although lack of objective medical evidence supporting the degree of limitation "cannot form the sole basis for discounting pain testimony," it is a factor that an ALJ may consider in assessing credibility. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The ALJ found that the objective medical evidence and the level of treatment did not support Knott's allegations regarding the frequency, severity and duration of his impairments. AR 20. The ALJ cited the August 1, 2011 findings of Dr. Benrazavi, an examining physician. Dr. Benrazavi indicated that Knott denied any hospitalization for any life-threatening infections. AR 20, 339. Knott's physical examination was negative for signs of wasting syndrome. AR 20, 342. Although there were mild to moderate signs of lymphadenopathy on the anterior bilateral cervical chains and posterior auricular, Knott was at normal optimal weight. AR 20, 342. The remainder of his physical examination was unremarkable. AR 20, 340-41. Dr. Benrazavi assessed that Knott had the ability to lift and carry 25 pounds frequently and 50 pounds occasionally, stand for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday. AR 20, 342. In March 2011, a cardiovascular specialist indicated that Knott was generally feeling well, without chest pain, shortness of breath, palpitation, dizziness or edema. AR 307. Knott reported being busy at school. *Id.*

      The ALJ rejected the opinion of Dr. Alcouloumre, a treating physician. AR 22. Dr. Alcouloumre opined in July 2012 that since August 2011, Knott had "severe, worsening" fatigue, weight gain, intermittent right first toe pain and

---

[12] In his Function Reports dated March 2, 2011 and August 2, 2011, Knott stated he was tired because he could not sleep, but he did not state that he had to nap during the day or that his medication caused his fatigue or insomnia. AR 157-64, 200-07.

11

depression. AR 408. He could lift and carry 20 pounds frequently and 50 pounds occasionally, stand/walk for less than 2 hours in an 8-hour workday, and sit for at least 6 hours in an 8-hour workday. AR 22, 410-11. He required periods of walking around during an 8-hour workday, a job that permitted shifting positions at will from sitting, standing or walking, and unscheduled breaks. AR 22, 410. He could bend for 50% of the workday and twist for 20% of the workday. AR 22, 411. He had a markedly limited ability to deal with work stress, and would miss more than three days of work per month. AR 22, 409-10, 412.

The ALJ gave Dr. Alcouloumre's opinion no weight, largely due to inconsistency within his own findings and the record evidence. AR 22, 370-91. An ALJ may reject a treating physician's opinion that is unsupported or contradicted by treatment records. See Bayliss, 427 F.3d at 1216; Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003). Dr. Alcouloumre's treatment note of May 15, 2012 indicates that Knott "gets a little tired" from Complera, but was tolerating it better than Atripla. AR 370. His physical examination was normal, except for a rash on his bilateral foot sides. AR 372. Knott indicated he felt mentally stable, and Dr. Alcouloumre supported him in seeking employment. AR 372. Dr. Alcouloumre's treatment note of October 31, 2011 indicates that Knott was asymptomatic for HIV. AR 384. Knott's physical examination was normal, and he indicated he felt mentally stable. AR 386.

Finally, an ALJ may consider his personal observations at the hearing as part of the overall credibility evaluation. Orn, 495 F.3d at 639. The ALJ noted that Knott's verbal responses and overall demeanor at the hearing did not suggest Knott was experiencing disabling mental limitations. AR 22. Knott was able to answer questions quite thoroughly. Id.

The ALJ's credibility finding is supported by substantial evidence. "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." Thomas, 278 F.3d at 959 (citing Morgan v.

*Comm'r,* 169 F.3d 595, 600 (9th Cir. 1999)).

## IV.

## **ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: February 19, 2015

ALICIA G. ROSENBERG
United States Magistrate Judge